**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

FABIAN LAMAR ROSSES,

                           Petitioner,

v.

RAYMOND MADDEN, Warden,

                           Respondent.

Case No.: 17-CV-1898-MMA(WVG)

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Fabian Lamar Rosses is a state prisoner proceeding pro se and in forma pauperis with a Second Amended Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (ECF No. 19.) Petitioner challenges his San Diego County Superior Court convictions for three counts of sexual penetration of a child ten years old or younger, and two counts of committing a lewd act upon a child under the age of fourteen, for which he was sentenced to five concurrent terms of fifteen years to life in state prison. He claims his federal constitutional rights were violated by an eight-year pre-charging delay (claim one), failure of the prosecution to disclose material evidence (claim two), and ineffective assistance of trial counsel (claim three). (*Id.* at 6-19.)

Respondent has filed an Answer and lodged the state court record. (ECF Nos. 25-26.) Respondent contends habeas relief is unavailable because: (1) the Second Amended

Petition was filed after expiration of the one-year statute of limitations, (2) the state court adjudication of claim one is neither contrary to, nor an unreasonable application of, clearly established federal law, and (3) claims two and three lack merit. (ECF No. 25 at 2-3; ECF No. 25-1 at 16-39.) Petitioner has filed a Traverse. (ECF No. 56.) He concedes claims two and three are untimely and asks they be dismissed, but argues he is entitled to relief on claim one and requests an evidentiary hearing on that claim. (*Id.* at 2-12.)

As to claim one, the Court finds it is timely, but recommends that federal habeas relief be denied and that an evidentiary hearing unwarranted because the adjudication by the state court is neither contrary to, nor an unreasonable application of, clearly established federal law, nor based on an unreasonable determination of the facts. The Court further finds that claims two and three are untimely and recommends denying habeas relief for that reason and on the alternate basis that they clearly fail on the merits under a de novo review.

## I. PROCEDURAL BACKGROUND

In a four-count felony complaint filed on November 16, 2012, Petitioner was charged with one count of sexual penetration of a child ten years of age or younger in violation of California Penal Code § 288.7(b) (count one), one count of committing a lewd act upon a child under the age of fourteen years in violation of California Penal Code § 288(a) (count two), and two counts of committing a forcible lewd act upon a child under the age of fourteen years in violation of California Penal Code § 288(b)(1) (counts three and four), based on events in 2012 involving "victim 2." (Lodgment No. 3, Clerk's Tr. ["CT"] at 1-3.) An amended Complaint was filed January 4, 2013, which added another count of committing a lewd act upon a child under the age of fourteen years in violation of California Penal Code § 288(a), based on events in 2005 involving "victim 1" (count five), and added a multiple victim enhancement under California Penal Code § 667.61(b)(c). (CT 4-7.) On January 24, 2013, a five-count Information was filed containing the same five counts and the same multiple victim enhancement. (CT 8-16.)

/ / /

/ / /

On February 25, 2014, a jury found Petitioner guilty on all five counts and returned a true finding on the enhancement.  (CT 374-79.)  On May 16, 2014, he was sentenced to five concurrent terms of fifteen years to life in state prison.  (CT 381-82.)

Petitioner appealed, arguing—as he does in claim one here and as he did in a pre-trial motion to dismiss—that the eight-year pre-charging delay as to count five violated his rights to due process and a fair trial as to all five counts.  (Lodgment No. 3.)  The appellate court affirmed on the basis that the trial court did not abuse its discretion in denying the pre-trial motion to dismiss because Petitioner did not suffer substantial prejudice and the delay was neither negligent nor taken to gain an advantage.  (Lodgment No. 5, *People v. Rosses*, No. D066065, slip op. (Cal. Ct. App. Apr. 14, 2016).)  On May 2, 2016, Petitioner filed a petition for review in the California Supreme Court presenting the same claim, which was summarily denied on June 22, 2016.  (Lodgment Nos. 6-7.)

Petitioner did not seek certiorari in the Supreme Court of the United States.  As discussed below, the one-year statute of limitations to file a federal habeas petition began to run the day after the last day he could have filed a certiorari petition, and, absent tolling, expired on September 20, 2017.  He filed his original federal Petition on September 14, 2017 (ECF No. 1), and his First Amended Petition on November 9, 2017 (ECF No. 3), both presenting only claim one.

On February 21, 2018, Petitioner presumptively constructively filed a pro se habeas corpus petition in the state supreme court presenting claims two and three raised here.[1] (Lodgment No. 8.)  That petition was denied on May 9, 2018, in an order which stated:

> The petition for writ of habeas corpus is denied.  (See *People v. Duvall* (1995) 9 Cal.4th 464, 474 (a petition for writ of habeas corpus must include copies of reasonably available documentary evidence); *In re Swain* (1949) 34 Cal.2d 300, 304 (a petition for writ of habeas corpus must allege sufficient facts with particularity.).)

(Lodgment No. 9.)

---

[1] Prisoners are entitled to the benefit of the "mailbox rule" which provides for constructive filing of court documents as of the date they are submitted to prison authorities for mailing to the court.  *Anthony v. Cambra*, 236 F.3d 568, 574-75 (9th Cir. 2000).

On March 2, 2018, Petitioner filed a motion to stay his federal petition and hold it in abeyance until the state court ruled on his habeas petition. (ECF No. 12.) On May 27, 2018, he presumptively constructively filed the Second Amended Petition, the operative pleading in this action, containing all three claims. (ECF No. 19.) The state court habeas petition was denied on May 9, 2018 (Lodgment No. 9), and this Court denied the stay and abeyance motion as moot on June 8, 2018. (ECF No. 17.)

## II.     EVIDENCE PRESENTED AT TRIAL

The following summary of evidence is taken from the appellate court opinion affirming Petitioner's conviction on direct review. Direct citations to the trial record are provided in the discussion of the individual claims as needed.

Rosses was close friends with a family member of victim 1, so victim 1 knew him well. When victim 1 was 10 years old he entered Rosses's bedroom, awoke Rosses, and asked if he could play with Rosses's game console. Rosses agreed and victim 1 lay down on Rosses's bed to play the video game. Rosses began "playing footsie" with victim 1, rubbed the back of his thigh, and grabbed his butt. Rosses then grabbed victim 1's penis and began rubbing it. Victim 1 moved and asked Rosses to stop. Rosses asked if he could rub victim 1's penis again and victim 1 shook his head no.

Later that evening, victim 1 reported the incident to his mother, who called the police. A San Diego police officer responded to the call and interviewed victim 1, victim 1's mother, and, separately, Rosses. The officer prepared a report and forwarded it to police Detective Donna Williams. Detective Williams interviewed victim 1's mother, Rosses, Rosses's girlfriend, and victim 1's stepfather. Detective Williams audio recorded her interviews. The next month a forensic interviewer conducted a videotaped interview of victim 1.

Detective Williams submitted the case to the district attorney's office, which rejected the charges. Detective Williams passed away approximately six years later.

Approximately seven years after the incident with victim 1, Rosses molested a 10-year-old girl, victim 2. Rosses digitally penetrated victim 2's vagina three separate times on one occasion and, on a separate occasion, grabbed her vagina and buttocks. [Footnote: We omit further details about

these offenses from our summary to preserve the confidentiality of victim 2's identity and because the details are not relevant to the issues raised on appeal.]

(Lodgment No. 5, *People v. Rosses*, No. D066065, slip op. at 2-3.)

### III.   PETITIONER'S CLAIMS

1.     Petitioner's rights to a fair trial and due process under the Fifth and Fourteenth Amendments to the United States Constitution were violated by the eight-year delay in charging count five because he was exposed to a greater sentence, was prevented from effectively impeaching and cross-examining the complaining witness and the investigating officer, and because the prosecution failed to justify delay which they used to their advantage by relying on evidence of the 2005 charge to bolster and overcome weaknesses in the 2012 charges.  (ECF No. 19 at 6-7.)

2.     Petitioner's right to due process under the Fifth and Fourteenth Amendments to the United States Constitution were violated by the prosecution's failure to disclose to the defense that: (a) a Sexual Assault Response Team ("SART") examination and DNA testing were conducted with negative results; (b) two witnesses were threatened with prosecution if they did not testify for the prosecution; and (c) a prosecution witness worked for the prosecutor's office.  (ECF No. 19 at 8-14.)

3.     Petitioner's right to the effective assistance of counsel under the Sixth and Fourteenth Amendments was denied by his counsel's failure to: (a) subject the evidence to meaningful adversarial testing, (b) obtain discovery, (c) adequately investigate and seek dismissal of count five on the basis of vindictive prosecution, (d) impeach victim 2 with her exposure to sexually explicit material, (e) impeach the detective who testified in lieu of the deceased investigating detective, (f) call a defense expert, and (g) investigate his altercation with victim 2's family three days before her accusation.  (*Id.* at 15-19.)

### IV.   DISCUSSION

As set forth herein, the Court finds that claim one is timely and recommends habeas relief be denied as to that claim without holding an evidentiary hearing because the state court adjudication is neither contrary to, nor an unreasonable application of, clearly

established federal law, and is not based on an unreasonable determination of the facts. The Court finds the remaining claims are untimely and recommends they be denied on that basis and because they clearly fail under a de novo review.

**A.    Standard of Review**

In order to obtain federal habeas relief with respect to claims adjudicated on the merits in state court, a federal habeas petitioner must demonstrate that the state court adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Even if § 2254(d) is satisfied, a petitioner must show a federal constitutional violation occurred in order to obtain relief. *Fry v. Pliler*, 551 U.S. 112, 119-22 (2007); *Frantz v. Hazey*, 533 F.3d 724, 735-36 (9th Cir. 2008) (en banc).

A state court's decision may be "contrary to" clearly established Supreme Court precedent (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407. Petitioner must show the factual findings upon which the state court's adjudication of Petitioner's claims rest are objectively unreasonable in order to satisfy § 2254(d)(2). *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A claim that has not been adjudicated on the merits in state court is reviewed de novo. *Pirtle v. Morgan*, 313 F.3d 1160, 1167-68 (9th Cir. 2002). Under such a review, "state court judgments of conviction and sentence carry a presumption of finality and legality and may be set aside only when a state prisoner carries his burden of proving that

(his) detention violates the fundamental liberties of the person, safeguarded against state action by the Federal Constitution." *Hayes v. Brown*, 399 F.3d 972, 978 (9th Cir. 2005) (en banc).

**B.    Claim One**

Petitioner alleges in claim one—as he did in state court on direct appeal—that his rights to due process and a fair trial under the Fifth and Fourteenth Amendments were violated by the eight-year delay in charging him in count five.  (ECF No. 19 at 6-7.)  He argued in state court that the justification offered by the prosecution for the delay (that the 2012 charges constituted new evidence supporting the 2005 charge) defied common sense. He contended he was prejudiced by the delay because (a) he was exposed to a greater sentence, (b) the complaining witness could not be impeached regarding differences between his original statement and his trial testimony nine years later because he could not remember speaking to the police in 2005, (c) the intervening death of the investigating officer prevented her cross-examination and impeachment, and (d) the prosecution used the delay to their advantage by using evidence of the 2005 charge to bolster and overcome weaknesses in the 2012 charges.[2]  (ECF No. 26-14 at 33-51.)

Despite the original Petition having been filed within the limitations period, Respondent answers that claim one is untimely because it was dismissed for failure to name a proper respondent, lack of a signature, and Petitioner amended to cure those defects after the limitations period expired.  (ECF No. 25-1 at 16-18.)  Respondent acknowledges equitable tolling should be available to render claim one timely (*id.* at 18), and alternately contends claim one is without merit because the denial by the state court does not involve

---

[2] The Court references Petitioner's state court filings in construing his federal habeas claims to fill gaps in his arguments due to the inartful nature of his pro se pleadings in this Court. *See Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) ("The Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants.") (quoting *Boag v. MacDougall*, 454 U.S. 364, 365 (1982); *Zichko v. Idaho*, 247 F.3d 1015, 1020 (9th Cir. 2001) (holding that liberal construction of pro se prisoner habeas petitions is especially important with regard to which claims are presented)).

an unreasonable application of controlling United States Supreme Court authority which provides that a pre-charging delay rises to the level of a denial of a federal due process right only where the delay is prejudicial. (*Id.* at 20-27.)

### 1. Statute of Limitations

A one-year statute of limitations applicable to federal habeas petitions pursuant to 28 U.S.C. § 2254 begins to run at the latest of—

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).

Because claim one relies on events which Petitioner was aware of at trial or on appeal, 28 U.S.C. § 2244(d)(1)(A) designates the triggering date as the last day he could have filed a petition for a writ of certiorari in the United States Supreme Court following the denial of his claims on direct appeal. *Bowen v. Roe*, 188 F.3d 1157, 1158-58 (9th Cir. 1999). The California Supreme Court denied his petition for review on June 22, 2016. (Lodgment No. 7.) Accordingly, the last day to file a certiorari petition was September 20, 2016, and the one-year federal statute of limitations began to run the next day, September 21, 2016. *See Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001) (holding that "in computing any period of time prescribed or allowed by . . . any applicable statute, the day of the act, event, or default from the designated period of time begins to run shall not be

included.") Thus, absent tolling, Petitioner had one year—until September 20, 2017—to timely file a federal habeas petition.

The original federal habeas Petition in this action was filed on September 14, 2017, prior to expiration of the statute of limitations. (ECF No. 1.) Although it listed four claims, they all alleged a due process violation arising from the pre-charging delay as to count five, mirroring the sole claim raised on direct appeal. (*Id.* at 5-10.) The Petition was signed by Petitioner's wife and mailed to the Court by her (precluding a constructive filing date) and incorrectly named the prison where he was incarcerated as the respondent. (*Id.* at 1, 15, 28.)

On September 20, 2017, the day the statute of limitations expired, the Court dismissed the original Petition on the basis it was not signed by Petitioner and failed to name a proper respondent. The Court provided Petitioner leave to amend to cure those defects on or before November 24, 2017. On November 9, 2017, a First Amended Petition was filed, again apparently mailed to the Court by Petitioner's wife (*see* ECF No. 3 at 17), which was a duplicate of the original Petition with the addition of a cover page naming a proper respondent and a signature page dated September 28, 2017 and bearing Petitioner's signature. (*Id.* at 1, 16.) Respondent answered the First Amended Petition on January 12, 2018. (ECF No. 7.) Respondent conceded it had been filed within the one-year statute of limitations and that the multiple claims listed therein were actually a single claim: the same claim exhausted on direct appeal. (*Id.* at 2.) Respondent argued the claim failed on the merits because the adjudication by the state court was neither contrary to, nor an unreasonable application of, clearly established federal law. (*Id.*) On March 1, 2018, Petitioner filed a Traverse to Respondent's Answer, arguing that the state court adjudication of the sole claim presented in the First Amended Petition was contrary to clearly established federal law. (ECF No. 13.) At that point, this matter was ready for adjudication on the First Amended Petition, which Respondent acknowledged was timely and contained a single, fully-exhausted claim one.

On March 2, 2018, Petitioner's wife filed a Motion for Stay and Abeyance on his behalf, requesting a stay until the state supreme court ruled on an attached habeas petition signed by Petitioner on February 21, 2018. (ECF No. 12 at 18-20.) That petition was filed in the state supreme court on March 5, 2018, and denied on May 9, 2018. (ECF No. 26-19 at 1; ECF No. 26-20 at 1.) On June 8, 2018, this Court denied the stay and abeyance motion as moot. (ECF No. 17.) On June 12, 2018, the Second Amended Petition, the operative pleading in this action, was docketed, although it was constructively filed on May 27, 2018, the date Petitioner presumptively handed it to prison officials for mailing to the Court (*see* ECF No. 19 at 22), prior to a ruling on the stay and abeyance motion. The Second Amended Petition presents all three claims raised here. (*Id.* at 6-19.) As discussed below, claims two and three are untimely in this Court because they were first presented to the state court about five months after the one-year federal statute of limitations expired, were presented to this Court for the first time in the Second Amended Petition about eight months after the statute of limitations expired, and there is no basis for tolling of the limitations period or relation back to the original petition as to claims two and three.

Accordingly, the original Petition in this matter was filed prior to expiration of the one-year statute of limitations and presented a single, fully-exhausted claim one. Although it was dismissed without prejudice and with leave to amend for procedural reasons, the Court maintained continuous jurisdiction, setting amendment deadlines which Petitioner obeyed. Thus, claim one in the Second Amended Petition relates back to the identical claim one in the timely filed original Petition. *See Henry v. Lungren*, 164 F.3d 1240, 1241 (9th Cir. 1999) (noting that a second petition will relate back to a timely filed first petition raising the same claims which was dismissed without prejudice for failure to exhaust state court remedies where district court expressly or impliedly retained jurisdiction); *Ramirez-Salgado v. Scribner*, 2009 WL 211117 at *7 (S.D. Cal. 2009) (finding second petition related back to first petition which was dismissed without prejudice and with leave to amend for failure to name a proper respondent). The Court finds claim one is timely.

## 2.    Merits

Petitioner presented claim one to the state appellate and supreme courts on direct appeal.  (Lodgment Nos. 3, 6.)  The state supreme court denied it in an order that stated: "The petition for review is denied.  Corrigan, J., was absent and did not participate." (Lodgment No. 7.)  The appellate court denied it in a written opinion.  (Lodgment No. 5.)

"Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim [are presumed to] rest upon the same ground."  *Ylst v. Nunnemaker*, 501 U.S. 797, 803-06 (1991).  The Court will look through the silent denial by the state supreme court to the last reasoned state court decision as to this claim, the appellate court opinion on direct appeal, which states:

> The People filed a complaint against Rosses, originally charging him only with the crimes involving victim 2.  Within a few months of filing the original complaint, the People amended the complaint to add count 5 for the crime against victim 1 and the multiple victim enhancement allegations.

> Rosses moved to dismiss the added charge and allegations, arguing the People's delay in bringing them violated his due process rights.  The People opposed the motion with a declaration stating in part: (1) Detective Williams submitted the case but the prosecutor rejected the charges; (2) Rosses denied the molestation to several witnesses and to Detective Williams, there were no percipient witnesses, and the only evidence of molestation when Detective Williams submitted the case came from victim 1's statements; and (3) the prosecution provided all 911 calls, field interview reports, forensic interviews, audio recorded follow-up interviews, and reports of interviews related to victim 1 to Rosses's counsel.  The court deferred ruling on the motion until after the trial.

> At trial, a San Diego police detective testified as to the contents of Detective Williams's reports.  Defense counsel used Detective Williams's reports and the video of the forensic interview of victim 1 to point out discrepancies in the testimony of victim 1's stepfather and victim 1, respectively.  The jury convicted Rosses on all counts and found true the multiple victim enhancement allegations.

> Before sentencing, the court heard argument on the deferred motion to dismiss.  After considering the parties' submissions on the issues and evidence admitted at trial, the court found the delay in charging Rosses with the

17-CV-1898-MMA(WVG)

additional count related to victim 1 did not result in substantial prejudice to Rosses and was not negligent or undertaken to gain an advantage. The court therefore denied the motion to dismiss.

## DISCUSSION

### I. Guiding Principles and Standard of Review

Although a delay in charging a criminal defendant does not implicate the right to a speedy trial, it may violate the right to a fair trial or to due process of law under the state and federal Constitutions. (*People v. Cowan* (2010) 50 Cal.4th 401, 430 (*Cowan*).) Thus, a defendant may seek to dismiss a charge based on a delay in prosecution that occurred before his arrest based on a showing of actual prejudice arising from the delay, such as from the loss of a material witness or the fading memories of witnesses. (*Ibid.*; see *People v. Abel* (2012) 53 Cal.4th 891, 908 (recognizing a claim of faded memory is speculative unless the defendant makes an affirmative showing of actual prejudice as a result); *People v. Hartman* (1985) 170 Cal.App.3d 572, 579 (*Hartman*) (recognizing a defendant must show actual prejudice based on the facts of the case).)

In ruling on such a motion to dismiss, the court must balance the harm to the defendant against the prosecution's justification for the delay. (*People v. Nelson* (2008) 43 Cal.4th 1242, 1250 (*Nelson*); *People v. Mirenda* (2009) 174 Cal.App.4th 1313, 1327 (*Mirenda*).) Thus, "a minimal showing of prejudice may require dismissal if the proffered justification for delay is insubstantial. By the same token, the more reasonable the delay, the more prejudice the defense would have to show to require dismissal." (*People v. Dunn-Gonzalez* (1996) 47 Cal.App.4th 899, 915 (*Dunn-Gonzalez*).) Whether the defendant was actually prejudiced and whether the delay was justified are questions of fact. (*Mirenda, supra*, at p. 1330; *Dunn-Gonzalez, supra*, at pp. 911–912.) We review the trial court's ruling for abuse of discretion, deferring to any factual findings of the court supported by substantial evidence. (*Cowan, supra*, 50 Cal.4th at p. 431.)

### II. No Prejudice Resulting from Pre–Accusation Delay

Rosses asserts the delay in charging him with respect to victim 1 prejudiced him due to: (1) an increase in his potential sentence from the multiple special victim enhancement allegations; (2) the unavailability of Detective Williams to testify at trial; (3) the faded memories of witnesses, specifically victim 1 and victim 1's stepfather; (4) the prosecutor's use of

17-CV-1898-MMA(WVG)

evidence related to victim 1 to bolster the counts related to victim 2; and (5) the prosecutor's use of the delay to bolster the credibility of victim 1. We do not agree.

A

First, Rosses did not establish actual prejudice due to an increase in his potential sentence from the multiple victim enhancement allegations. Counts 1 through 5, along with the special allegations, exposed him to a potential sentence of five consecutive terms of 15 years to life, totaling 75 years to life. Had the prosecutor charged Rosses with the crime against victim 1 in an earlier, separate case, Rosses's potential sentence would have been eight years as opposed to 15 years to life on that charge. However, if he had been convicted in that case, his potential sentence for counts 1 through 4 in the present case would have increased to four consecutive terms of 25 years to life, totaling 100 years to life. (See § 667.61, subds. (a), (c)(8), & (d)(1).) Therefore, the delay in charging him actually reduced, not increased, his total potential sentence. Rosses contends he may not have been convicted of the count relating to victim 1 had he been tried closer to the time of the act or, if he had been convicted, he may not have committed the crimes against victim 2. These contentions are speculative and insufficient to establish prejudice. (See *People v. Lewis* (2015) 234 Cal.App.4th 203, 213.) Further, the potential sentence increase from the addition of count 5 did not result from a change in law (see Historical and Statutory Notes, 49 West's Ann. Pen. Code (2010 ed.) foll. § 667.6, pp. 399-402), but instead from Rosses's own continued criminal activity. In the end, the trial court sentenced Rosses to five concurrent, not consecutive, terms of 15 years to life.

B

Second, Rosses did not show actual prejudice as a result of either faded memories or the loss of Detective Williams as a witness. The loss of a material witness or the fading memory of witnesses may cause prejudice. (*People v. Morris* (1988) 46 Cal.3d 1, 37, disapproved on other grounds in *In re Sassounian* (1995) 9 Cal.4th 535, 543-544.) However, "'(t)he statute of limitations is usually considered the primary guarantee against bringing overly stale criminal charges.'" (*Nelson, supra*, 43 Cal.4th at pp. 1250-1251, quoting *People v. Archerd* (1970) 3 Cal.3d 615, 639.) Therefore, merely showing witness memories have faded, without more, is not sufficient to establish actual prejudice. (*Nelson*, at pp. 1251-1252.)

Rosses contends victim 1 changed the details of his testimony between the time of the incident and trial, but there is no evidence in the record any

13

discrepancies in victim 1's story were due to the time delay or faded memory. An expert on how children disclose sexual abuse testified children tend to disclose incrementally, remembering more as they talk more about the incident. Victim 1's story differed slightly even from the time of the preliminary hearing to the trial. Rosses had the opportunity to cross-examine victim 1 on any alleged discrepancies and the jury could consider them in evaluating victim 1's credibility. Although Rosses contends defense counsel could not impeach victim 1's trial testimony because he could not remember speaking with the police officer after the incident, defense counsel could have used the police reports. In addition, both the police officer and the forensic examiner were available for cross-examination regarding their respective interviews with victim 1. The jury saw the entire video of the forensic interview of victim 1, and defense counsel used the video of the forensic interview to impeach victim 1.

Rosses refers to arguments made at trial regarding victim 1's stepfather's inability to remember if he saw victim 1 in Rosses's room, but the stepfather's memory in this regard is irrelevant because Rosses admitted victim 1 was in his room on the day in question. Rosses also points out the stepfather could not recall speaking with the police officer, but the defense was able to effectively use Detective Williams's reports to impeach the stepfather on this point.

With respect to Detective Williams, the defense had all the records of Detective Williams's work on the case, including audio recordings of her interviews. The trial court considered the recordings of her interviews better evidence of the interviews than Detective Williams's recollection would have been and found the admission of otherwise inadmissible hearsay regarding the content of her reports mitigated any prejudice caused by her absence at trial. While Rosses contends the defense was somehow unable to impeach victim 1's testimony as a result of Detective Williams's unavailability at trial, nothing in the record indicates Detective Williams ever interviewed victim 1.

C

Third, Rosses also did not show actual prejudice as a result of the prosecutor's use of evidence relating to victim 1 to bolster the case relating to victim 2 and the time gap to bolster victim 1's credibility. Under Evidence Code section 1108, the trial court had discretion to admit evidence regarding Rosses's touching of victim 1 during the trial regarding Rosses's crimes against victim 2 under Evidence Code section 1108, regardless of whether or not charges related to victim 1 were before the jury. (See *People v. Earle*

(2009) 172 Cal.App.4th 372, 397 (explaining Evid.Code, § 1108 permits evidence of similar uncharged sex crimes to demonstrate the defendant's disposition to commit such crimes).) This obviates the impact of the nine-year delay as the prosecutor could have used evidence related to victim 1 to bolster the case with respect to victim 2 even absent the delay.

With respect to the prosecutor's use of the time gap to bolster victim 1's credibility, the trial court found the prosecutor's comments did not exceed the scope of counsel's entitlement to argue all inferences to be drawn from the evidence relevant to credibility. Both sides made arguments regarding credibility and the court noted "the inability to recall details works to some extent against both parties." Finally, to the extent the later offenses with respect to victim 2 provided the jury with corroboration of Rosses's guilt with respect to victim 1, any prejudice is not the result of the delay, but is, instead, the result of Rosses's own continued criminal conduct.

Based on the foregoing, we conclude there is substantial evidence to support the trial court's finding there was no substantial prejudice as a result of the delay in charging Rosses with count 5.

### III.   Justification for Delay

The record here does not clearly establish why charges were not originally filed against Rosses related to the incident with victim 1. Detective Williams submitted the case, but the charges were originally rejected, perhaps based on the absence of percipient witnesses and Rosses's consistent denials of any wrongdoing. Regardless, the prosecutor was under no obligation to file charges unless he or she was satisfied guilt was provable beyond a reasonable doubt. (*Cowan, supra*, 50 Cal.4th at p. 435; *Mirenda, supra*, 174 Cal.App.4th at p. 1329, quoting *People v. Boysen* (2007) 165 Cal.App.4th 761, 777.) We do not second-guess the prosecutor's decision whether to file charges. (See *Nelson, supra*, 43 Cal.4th at p. 1256.) The prosecutor filed the charge relating to victim 1 after victim 2 came forward specifically because victim 2's allegations convinced the prosecutor the case against Rosses with respect to victim 1 could be proved to a jury beyond a reasonable doubt. Although the prosecution may have used the time gap to bolster victim 1's credibility, the record as a whole does not support the conclusion the prosecution delayed filing charges related to victim 1 for the purpose of gaining a tactical advantage. Substantial evidence supports the court's finding the delay in this regard was neither negligent nor undertaken to gain an advantage.

17-CV-1898-MMA(WVG)

In making the ruling, the trial court correctly explained "Section 1108 evidence is additional evidence. It is character evidence that the law has recognized is appropriate in these kinds of cases." Allegations of a second, similar crime may lend credibility to previous accusations, causing the prosecutor to feel confident in charging the defendant with respect to the earlier offense and may, therefore, provide justification for a preaccusation delay with respect to the earlier crime. (See *People v. New* (2008) 163 Cal.App.4th 442, 466 (*New*) (32 year delay in charging defendant with wife's murder was reasonable based on finding there was not a prosecutable case regarding the original murder until third wife died in a similar manner) [Footnote: Rosses argues to the extent *New* supports the proposition propensity evidence of another unrelated criminal allegation can justify a lengthy prearrest delay, it makes new law and is wrongly decided. We disagree. The other criminal allegations in *New*, as in the present case, are additional relevant evidence with respect to the prior allegations because they relate to a similar crime conducted in a similar manner. (*New*, *supra*, 163 Cal.App.4th at p. 466.)]; see also *Nelson*, *supra*, 43 Cal.4th at pp. 1256-1257 (new evidence in the form of a cold hit on a fingerprint was justification outweighing any prejudice as a result of charges for a 1976 murder being brought in 2002); *People v. Catlin* (2001) 26 Cal.4th 81, 109–110 (nine-year delay in murder charges justified where it would have been extremely difficult or impossible to make out a case against defendant until additional evidence of his guilt in the form of similar poisonings of two more persons emerged).)

Rosses incorrectly relies on *People v. Pellegrino* (1978) 86 Cal.App.3d 776 (*Pellegrino*) and *Hartman*, *supra*, 170 Cal.App.3d 572. The court in *Pellegrino* upheld the trial court's dismissal based on a pre-accusation delay resulting from a lack of interest in prosecuting the original offense but did not address whether new, admissible evidence of similar criminal conduct could be sufficient justification for a delay. (*Pellegrino, supra*, 86 Cal.App.3d at p. 781.) The court in *Hartman* found no justification for delay where the People waited an additional five and a half years after obtaining new evidence to file a murder charge. (*Hartman, supra*, 170 Cal.App.3d at p. 582.) Here, there was no such postdiscovery delay.

For the reasons stated above, we conclude there is substantial evidence to support the trial court's findings Rosses did not suffer substantial prejudice and the delay was neither negligent nor undertaken to gain an advantage. Accordingly, we conclude the trial court did not abuse its discretion in denying Rosses's motion to dismiss.

(Lodgment No. 5, *People v. Rosses*, No. D066065, slip op. at 2-12.)

17-CV-1898-MMA(WVG)

The United States Supreme Court has held that claims alleging pre-charging delay are analyzed as due process violations under the Fifth Amendment and require a showing of actual prejudice from the delay. *United States v. Marion*, 404 U.S. 307, 324-25 (1971). Petitioner "must prove actual, non-speculative prejudice from the delay," and meet a "heavy burden that is rarely met" in showing his ability to defend himself was impaired. *United States v. Corona-Verbera*, 509 F.3d 1105, 1112 (9th Cir. 2007).

However, "proof of prejudice is generally a necessary but not sufficient element of a due process claim." *United States v. Lovasco*, 431 U.S. 783, 790 (1977) ("[T]he due process inquiry must consider the reasons for the delay as well as the prejudice to the accused."). Even if Petitioner establishes prejudice, he must show the length of the delay, when weighed against reasons for the delay, "violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' and which define 'the community's sense of fair play and decency.'" *Id.* (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935); *Rochin v. California*, 342 U.S. 165, 173 (1952)). Those concepts are not violated when a prosecutor defers charging a defendant "until they have probable cause to believe an accused is guilty," because "prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt." *Id.* at 790-91.

Petitioner first contends he was prejudiced because the prosecutor used the 2012 allegations regarding victim 2 to strengthen the 2005 allegations in count five regarding victim 1. The state court found that even if count five had not been charged, evidence of that alleged uncharged offense could have been introduced at trial under the California Evidence Code and therefore amending the felony complaint to include count five was not prejudicial in that respect. The court also found that "to the extent the later offenses with respect to victim 2 provided the jury with corroboration of Rosses's guilt with respect to victim 1, any prejudice is not the result of the delay, but is, instead, the result of Rosses's own continued criminal conduct." (Lodgment No. 5, *People v. Rosses*, No. D066065, slip op. at 9.) Petitioner has not shown that finding is objectively unreasonable. As to the state

court's determination that the state evidentiary code provides that his conduct in 2005, whether charged or uncharged, is relevant and admissible to prove his later similar criminal conduct in 2012, this Court must defer to the state court's construction of state law unless it is "untenable or amounts to a subterfuge to avoid federal review of a constitutional violation." *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1399 (9th Cir. 1989); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Petitioner has not satisfied that standard as to this first aspect of alleged prejudice and has not carried his "heavy burden of showing actual prejudice that is definite and not speculative." *United States v. Ross*, 123 F.3d 1181, 1185 (9th Cir. 1997).

The state court reasonably rejected Petitioner's second contention that he was exposed to a greater sentence than he would have been if he had been timely charged in count five. The state court found that "the delay in charging him actually reduced, not increased, his total potential sentence," and that his contentions that "he may not have been convicted of the count relating to victim 1 had he been tried closer to the time of the act or, if he had been convicted, he may not have committed the crimes against victim 2" are "speculative and insufficient to establish prejudice." (Lodgment No. 5, *People v. Rosses*, No. D066065, slip op. at 6-7.) Petitioner has not shown the state court's finding—that his allegation of prejudice in this regard is speculative—is based on an unreasonable determination of the facts or involves an unreasonable application of clearly established federal law. *See Corona-Verbera*, 509 F.3d at 1113 ("[A]llegations of prejudice must be supported by non-speculative proof.").

The state court reasonably rejected Petitioner's contention that he was prejudiced because victim 1, who was ten years old in 2005 and nineteen years old at the time of trial (*see* Lodgment No. 2, Reporter's Tr. ["RT"] at 120), could not remember making a police statement in 2005 and therefore could not be impeached regarding inconsistencies between that report and his trial testimony. The state appellate court noted that the trial court found

that "both sides made arguments regarding credibility," and that the trial court noted that "the inability to recall details works to some extent against both parties." (Lodgment No. 5, *People v. Rosses*, No. D066065, slip op. at 9.) The court also found that "both the police officer and the forensic examiner were available for cross-examination regarding their respective interviews with victim 1. The jury saw the entire video of the forensic interview of victim 1, and defense counsel used the video of the forensic interview to impeach victim 1." (*Id.* at 8.)

The state court also reasonably rejected Petitioner's contention that the intervening death of Donna Williams, the investigating detective, prevented her from being effectively cross-examined. The state court found the detective had never interviewed victim 1 and agreed with the trial court that the recordings of her other interviews constituted "better evidence of the interviews than Detective Williams's recollection would have been," and that "the admission of otherwise inadmissible hearsay regarding the content of her reports mitigated any prejudice caused by her absence at trial." (*Id.*) Those findings are consistent with clearly established federal law. *See Barker v. Wingo*, 407 U.S. 514, 521 (1972) (noting that a pre-charging delay does not "per se prejudice the accused's ability to defend himself" because the prosecution bears the burden of proof and its case may be weakened by delay); *United States v. Manning*, 56 F.3d 1188, 1194 (9th Cir. 1995) ("Generalized assertions of the loss of memory, witnesses, or evidence are insufficient to establish actual prejudice.").

Petitioner has not met his "heavy burden" of showing "actual, non-speculative prejudice from the delay" in this respect. *Corona-Verbera*, 509 F.3d at 1112. As Petitioner has not shown prejudice, there is no need to balance the prejudice with the reason for the delay. *Manning*, 56 F.3d at 1194. However, even assuming Petitioner has shown prejudice, the state court found that "the prosecutor was under no obligation to file charges unless he or she was satisfied guilt was provable beyond a reasonable doubt," and "[a]lthough the prosecution may have used the time gap to bolster victim 1's credibility, the record as a whole does not support the conclusion the prosecution delayed filing

charges related to victim 1 for the purpose of gaining a tactical advantage." (Lodgment No. 5, *People v. Rosses*, No. D066065, slip op. at 10.) Those findings are consistent with clearly established federal law. *See Lovasco*, 431 U.S. at 790-91 (holding that a prosecutor may defer charging a defendant "until they have probable cause to believe an accused is guilty," and "are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt.") Petitioner has not shown the delay "violates those fundamental conceptions of justice which lie at the base of our civil and political institutions, and which define the community's sense of fair play and decency," *id.*, when the initial delay resulted from prosecutorial discretion in not charging him in 2005, and only later charging him in the 2005 case when victim 2 came forward in 2012 with additional similar allegations of molestation.

Furthermore, any attempt to show that the state court's balancing is contrary to or an unreasonable application of clearly established federal law would fail. In *People v. New*, 163 Cal. App. 4th 442 (2008)—a case Petitioner relied on in state court—the petitioner was later denied habeas relief in the federal district court. The Ninth Circuit found, in affirming the denial of habeas relief, that "[t]he relevant Supreme Court precedents explicitly decline to set out a clear test for balancing justification against prejudice, asserting that such balancing requires case-by-case consideration. In light of the lack of a clear test, we cannot say that the state court applied Supreme Court law in a manner that was objectively unreasonable in finding that the justification here outweighed the prejudice." *New v. Uribe*, 532 Fed. Appx. 743, 744 (9th Cir. 2013) (citing *Lovasco*, 431 U.S. at 796-97; *United States v. Marion*, 404 U.S. 307, 324-25 (1971)). Thus, Petitioner has not—and cannot—show that it was contrary to or an unreasonable application of clearly established federal law for the state court to find that any prejudice was not outweighed by the reasons for the delay. Neither has he shown that finding is based on an unreasonable determination of the facts.

17-CV-1898-MMA(WVG)

In sum, the Court finds claim one is timely, and that the state court adjudication is neither contrary to, nor an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts.[3]

## C. Claim Two

Petitioner alleges in claim two that the prosecution failed to disclose to the defense that (a) a SART examination and DNA testing were conducted with negative results; (b) two prosecution rebuttal witnesses, Betty and Henry Brown, were threatened with prosecution if they did not testify; and (c) prosecution witness Tracy Smith, the mother of victim 2, worked for the prosecution's office. (ECF No. 19 at 8-14.)

Respondent answers that this claim is untimely because it was included in the Second Amended Petition filed after expiration of the statute of limitations and does not relate back to the only claim in the timely filed original Petition. (ECF No. 25-1 at 18-19.) Respondent alternately contends the claim is without merit because (a) Petitioner does not identify any SART or DNA tests which were conducted, and he could not have been prejudiced by lack of access to tests with negative results; (b) Petitioner has no support for his contention that Betty and Henry Brown were coerced into testifying, and even if they were he was not prejudiced because they did not present critical testimony; and (c) Tracy Smith began her trial testimony by fully disclosing the history of her employment with the District Attorney's office. (*Id.* at 27-34.) Petitioner replies by agreeing that this claim is untimely and requests that it be dismissed. (ECF No. 27 at 2.) This Court agrees.

### 1. Statute of Limitations

As set forth in the discussion of claim one, the one-year statute of limitations began to run under 28 U.S.C. § 2244(d)(1)(A) on September 21, 2016, and, absent tolling, expired

---

[3] Although Petitioner requests an evidentiary hearing on this claim, one is not necessary where, as here, the federal claim can be denied on the basis of the state court record, and where the petitioner's allegations, even if true, do not provide a basis for habeas relief. *Campbell v. Wood*, 18 F.3d 662, 679 (9th Cir. 1994); *see also Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("It follows that if the record . . . precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

on September 20, 2017. Although 28 U.S.C. § 2244(d)(1)(D) provides that the statute of limitations can begin to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence," Petitioner does not indicate when he became aware the prosecution had allegedly withheld evidence. Without such an allegation, he is not entitled to a later triggering date. In any case, as discussed below, he has not identified any evidence that was withheld.

Claim two was first presented to a state court on February 21, 2018, when Petitioner presumptively constructively filed his state habeas petition in the California Supreme Court (ECF No. 26-19 at 16), over five months after the one-year limitations period expired as calculated under 28 U.S.C. § 2244(d)(1)(A). On March 2, 2018, he filed a motion for stay and abeyance in this Court seeking to have this action stayed and his First Amended Petition held in abeyance while he completed exhaustion of his state court remedies as to claims two and three. (ECF No. 12.) The state habeas petition was denied on May 9, 2018. (Lodgment No. 9.) He presumptively constructively filed a Second Amended Petition in this Court on May 27, 2018, presenting claim two here for the first time. (ECF No. 19 at 22.) The Court denied the stay and abeyance motion as moot on June 12, 2018 and directed Respondent to answer the Second Amended Petition. (ECF Nos. 17, 20.)

Accordingly, Petitioner waited until after the one-year statute of limitations expired to begin exhausting state court remedies as to claim two, to present it to this Court, and to file a stay and abeyance motion. Thus, to the extent the one-year limitations period began under 28 U.S.C. § 2244(d)(1)(A), claim two is untimely. *See Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005) (holding that a state prisoner may *timely* file "a 'protective' petition in federal court and ask[] the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted.") (citing *Rhines v. Weber*, 544 U.S. 269, 277 (2005) (noting that *granting* a stay and abeyance "effectively excuses a petitioner's failure to present his claims first to the state courts."); *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001) (holding that statutory tolling is unavailable if the first state habeas petition is filed after the limitations period expired); *Mayle v. Felix*, 545 U.S. 644, 657 (2005) (holding that

only claims of the same "time and type" relate back to timely claims in an original petition)). Even to the extent Petitioner filed the Second Amended Petition containing this claim while his stay and abeyance motion was still pending, a stay and abeyance was not available to render claim two timely because, as set forth below, claims two and three are plainly meritless. *See Dixon v. Baker*, 847 F.3d 714, 720-22 (9th Cir. 2017) (holding that a *Rhines* stay requires that at least one of the unexhausted claims is not plainly meritless). Accordingly, based on the record before the Court, claim two is untimely and the Court recommends habeas relief be denied on that basis.

Although Petitioner concedes claim two is untimely, he also states: "I am unlearned in the law, I have no help . . . no one is willing to help me." (ECF No. 27 at 2.) As set forth above, 28 U.S.C. § 2244(d)(1)(D) could provide a later triggering date for the one-year statute of limitations depending on when Petitioner became aware the prosecution had allegedly withheld evidence. However, as discussed below, he has not identified any withheld evidence. Because claim two is plainly meritless, it is not necessary to determine whether a later triggering date under 28 U.S.C. § 2244(d)(1)(D) is possible, and this Court recommends it be denied on the alternate basis that it fails under de novo review.

### 2. Merits

Petitioner presented claim two to the state supreme court in a habeas petition, which was denied in an order that stated:

> The petition for writ of habeas corpus is denied. (See *People v. Duvall* (1995) 9 Cal.4th 464, 474 (a petition for writ of habeas corpus must include copies of reasonably available documentary evidence); *In re Swain* (1949) 34 Cal.2d 300, 304 (a petition for writ of habeas corpus must allege sufficient facts with particularity.).)

(Lodgment No. 9.)

It appears that the state court order is an indication that Petitioner failed to exhaust state court remedies and does not constitute an adjudication on the merits of the claim. *See Seeboth v. Allenby*, 789 F.3d 1099, 1104 n.3 (9th Cir 2015) ("[A] citation to *Duvall* and *Swain* together constitutes dismissal without prejudice with leave to amend to plead

17-CV-1898-MMA(WVG)

required facts with particularity."). Although this Court may not grant habeas relief on an unexhausted claim, it can deny relief where the claim clearly fails under a de novo review. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) (holding that irrespective of whether AEDPA deference applies, a federal habeas court may conduct a de novo review to deny a petition but not to grant one).

Petitioner alleges in claim two that the prosecution withheld evidence from the defense within the meaning of *Brady v. Maryland*, 373 U.S. 83 (1963) (holding that federal due process requires the prosecution to disclose to the defense any evidence that is material to either guilt or punishment). (ECF No. 19 at 8-14.) In order to prove a *Brady* violation, a petitioner must show that "(1) the evidence was exculpatory or impeaching; (2) it should have been, but was not produced; and (3) the suppressed evidence was material to his guilt or punishment." *Paradis v. Arave*, 130 F.3d 385, 392 (9th Cir. 1997). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995). "A 'reasonable probability' of a different result is . . . shown when the government's evidentiary suppression 'undermines the confidence in the outcome of the trial.'" *Id.* at 434 (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)).

Petitioner first alleges the prosecution failed to disclose to the defense the results of a SART examination and a DNA test relating to victim 2, the female victim in the 2012 charges, which he contends "came back negative of any sexual violation," and could have been used to impeach the victim's testimony that he digitally penetrated her vagina three times with two of his fingers. (ECF No. 19 at 9; ECF No. 26-19 at 5.) Petitioner does not provide any evidence that a SART examination was performed or DNA testing conducted, or even explain why he believes the tests exist. To the contrary, defense counsel cross-examined Detective Dan Burow, who testified in lieu of the deceased investigating detective (Williams), that no DNA testing was performed in the 2005 investigation and

explained that such tests are not done in cases of simple touching where there is no indication bodily fluids were transmitted. (RT 446-47.) Moreover, victim 2, who was ten years old in 2012, testified that she did not tell her mother that Petitioner had inserted his fingers into her vagina until over a month after it happened because Petitioner told her not to tell and she was scared it would tear her family apart, and although she immediately told her younger sister she told her sister to keep it a secret. (RT 266, 301-28.) Thus, there is a lack of evidence that a SART examination or DNA testing were even performed. But assuming they were performed and had negative results, Petitioner has not shown a negative result was material to the defense because the victim did not report the assault until a month after it happened. Moreover, Petitioner does not support his implied contention the victim suffered the type of physical trauma which would have been discovered in a SART examination a month later or that DNA evidence could have been obtained. Accordingly, because Petitioner's contention that a SART examination and DNA testing were conducted and not turned over to the defense is without foundation and purely speculative, it does not provide a basis for habeas relief. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (denying habeas relief on the basis that "presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

Petitioner next alleges: "Betty Brown and her son did not know much of what was going on but were forced to testify by the prosecutor under the threat by the prosecutor that if they don't testify they were going to lose their business." (ECF No. 19 at 12.) He states that Betty Brown and members of her family held a license to run a daycare center at which victim 2 spent time, that Betty Brown saw a mother slap her own child on one occasion at the daycare center but did not report it to authorities as required by law, and the prosecutor threatened to have the daycare license revoked on that basis if she and her son Henry Brown did not testify for the prosecution. (*Id.* at 8.)

The defense called Donielle Holloway-Wynn who testified that she worked at the Betty Brown daycare center which accommodates 14 children, that Tracy Smith (the

mother of victim 2), Stacy Rosses (Petitioner's wife), and herself had been friends since 1994, and Tracy Smith's four children, whom Holloway-Wynn has known since their birth, attended the daycare center in 2012. (RT 449-50.) Ms. Holloway-Wynn testified that Tracy Smith openly talked in front of her children of her own sexual abuse, was verbally and physically abusive toward her children, she allowed her children, including victim 2, to watch pornographic material, and victim 2 once brought one of her mother's pornographic books to the daycare center. (RT 451-55.) The defense called Stacy Rosses, Petitioner's wife, who testified that she often took care of her sister Tracy Smith's daughter, victim 2, and that Tracy often spoke of her own history of sexual molestation, as well as sexually explicit matters, in front of her children, sometimes while they were at the daycare center. (RT 469-74.) The defense called Hannah Brown, Betty Brown's daughter and the cousin of Tracy Smith and Stacy Rosses, who testified that she saw Tracy Smith's children, including victim 2, nearly every day while they were growing up, including at the Betty Brown daycare center, and that Tracy Smith was verbally and physically abusive to her children and exposed them to pornography in their household. (RT 523-29.)

The prosecution called Henry Brown in rebuttal, who testified he was living with his mother in 2012 at the house where she runs a daycare center, and that Petitioner is married to his cousin, Stacy Rosses. (RT 659-61.) When Henry came home from work the evening Petitioner was accused of molesting Tracy Smith's daughter, Petitioner appeared to be intoxicated. (RT 659-65.) Betty Brown testified that she runs a daycare center, that her niece Tracy Smith's four children attend the center, including victim 2, that she was not aware victim 2 had ever spoken about seeing pornography, was not aware of any physical abuse of her, and said that Petitioner smelled of alcohol on the night he was accused of molesting victim 2. (RT 669-75.)

Petitioner presents no evidence to support his conclusory allegation that Betty or Henry Brown were threatened with revocation of Betty's daycare license if they refused to testify. Furthermore, they both testified that Petitioner appeared intoxicated on the night of the day he was accused of molesting victim 2, and Betty Brown testified she did not

17-CV-1898-MMA(WVG)

observe victim 2 being abused or exposed to pornography at the daycare center. Even assuming Petitioner could show that they were threatened with prosecution if they did not testify as rebuttal witnesses and could have impeached them both on that basis, he has not established materiality, particularly with respect to abuse and exposure to pornography, as the defense witnesses testified those things occurred primarily at victim 2's own home and not the daycare center and would therefore not have been within the personal knowledge of Betty Brown. *See Kyles*, 514 U.S. at 433-34 (holding that evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.").

Finally, Petitioner alleges the prosecution did not disclose that Tracy Smith, the mother of victim 2, had worked for the prosecution's office. (ECF No. 19 at 12.) However, Tracy Smith began her trial testimony by stating that she worked for San Diego County for over eleven years, starting at Child Support Services "when it was still under the D.A.'s office," after which she worked for Revenue and Recovery, Juvenile Enforcement and Delinquency, Health and Human Services, back to the District Attorney's office as a receptionist and in Extraditions and Public Assistance Fraud, and then to her current employment at Health and Human Services as a Human Service Specialist. (RT 364.) She also testified that she was friends with Petitioner before he met and married her sister Stacy. (RT 365.) Petitioner's claim that the prosecutor withheld the fact that Tracy worked for the prosecution's office is contradicted by the record and fails as wholly unsupported. *See Blackledge*, 431 U.S. at 74 (denying habeas relief on the basis that "presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

The Court recommends habeas relief be denied as to claim two because it is untimely, and alternately because it clearly fails under de novo review.

**D. Claim Three**

Petitioner alleges in claim three that his right to the effective assistance of counsel under the Sixth and Fourteenth Amendments was denied by his trial counsel's failure to

(a) subject the prosecution's evidence to meaningful adversarial testing, (b) obtain discovery, (c) investigate count five and seek dismissal on the grounds of vindictive prosecution, (e) investigate victim 2's exposure to sexually explicit material, (f) impeach victim 1 and the detective who testified in lieu of the deceased investigating detective, (g) call the expert retained by the defense to testify at trial, and (h) investigate an altercation between Petitioner and victim 2's family three days before her accusation. (*Id.* at 15-19.)

Respondent answers that this claim is untimely and clearly without merit. (ECF No. 25-1 at 18-19, 34-39.) Petitioner agrees his claim is untimely and requests it be dismissed. (ECF No. 27 at 2.) This Court agrees with Petitioner.

### 1. Statute of Limitations

As it did for claim one, the one-year statute of limitations began to run as to claim three under 28 U.S.C. § 2244(d)(1)(A) on September 21, 2016—the day after the last day Petitioner could have filed a petition for a writ of certiorari in the Supreme Court of the United States—and expired on September 20, 2017. Claim three was first presented to the state court on February 21, 2018 (ECF No. 12 at 18), five months after the one-year limitations period expired, and it first presented to this Court in the Second Amended Petition filed on May 27, 2018 (ECF No. 19 at 22), eight months after expiration of the limitations period. For the reasons discussed above with respect to claim two, claim three is also untimely.

### 2. Merits

The Court alternately recommends denying relief on claim three because it is plainly without merit. Petitioner presented claim three to the state supreme court in a habeas petition along with claim two, which was denied in an order that stated:

> The petition for writ of habeas corpus is denied. (See *People v. Duvall* (1995) 9 Cal.4th 464, 474 (a petition for writ of habeas corpus must include copies of reasonably available documentary evidence); *In re Swain* (1949) 34 Cal.2d 300, 304 (a petition for writ of habeas corpus must allege sufficient facts with particularity.).)

(Lodgment No. 9.)

As with claim two, it appears the state court order is an indication Petitioner failed to exhaust state court remedies and is not an adjudication on the merits. The Court cannot grant relief but may deny the claim because it clearly fails under a de novo review. 28 U.S.C. § 2254(b)(2); *Seeboth*, 789 F.3d at 1104 n.3; *Berghuis*, 560 U.S. at 390.

In order to establish constitutionally ineffective assistance of counsel, Petitioner must show that counsel's performance was deficient, which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Wash.*, 466 U.S. 668, 687 (1984). He must also show counsel's deficient performance prejudiced his defense, which requires showing that "counsel's errors were so serious as to deprive [Petitioner] of a fair trial, a trial whose result is reliable." *Id.* To show prejudice, Petitioner need only demonstrate a reasonable probability that the result of the proceeding would have been different absent the error. *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* Petitioner must establish both deficient performance and prejudice to prove ineffective assistance of counsel. *Id.* at 687. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

Petitioner first claims his counsel "failed completely to subject the prosecution's case to a meaningful adversarial testing process." (ECF No. 19 at 15.) This highly generic claim fails as conclusory because there are no supporting allegations whatsoever. *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) (holding that conclusory allegations are insufficient to support a claim of ineffective assistance of counsel). It is also belied by the record, which shows defense counsel called witnesses; cross-examined prosecution witnesses; and filed pre-trial motions seeking discovery (CT 11-30), to dismiss or sever count five (CT 31-51, 81-88, 104-06, 136-50), to exclude evidence (CT 98-103), and to introduce evidence of third-party culpability and sexual knowledge of the victim (CT 118-35). This claim is clearly without merit. *See Blackledge*, 431 U.S. at 74 (denying habeas relief on the basis that "presentation of conclusory allegations unsupported by specifics is

subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

Petitioner next claims his counsel did not receive or request discovery "until it was too late to investigate and did nothing about." [sic]  (ECF No. 19 at 15.)  He contends that when the prosecutor told defense counsel that they did not have all the discovery documents, defense counsel "failed to use the court to obtain the necessary documents for the defense of petitioner."  (*Id.* at 16.)  Petitioner fails to identify any item of discovery not obtained by the defense or obtained late, or any effect whatsoever on the defense as a result, and this claim fails as conclusory.  *James*, 24 F.3d at 26.

Petitioner claims his counsel failed to conduct an adequate investigation on count five and failed to seek dismissal of that count on the basis it "was added after petitioner claimed his right to trial and did not take a plea."  (ECF No. 19 at 15-16.)  The allegation of failure to investigate fails as wholly conclusory.  *James*, 24 F.3d at 26.  To the extent Petitioner contends trial counsel should have moved to dismiss count five on the basis of retaliatory or vindictive prosecution, the claim is plainly meritless.  *See United States v. Stewart*, 770 F.2d 825, 829 (9th Cir. 1985) ("Even assuming the government did seek the superseding indictment in retaliation for Stewart's refusal to plead guilty, that alone is insufficient to establish vindictive prosecution."); *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) ("[T]he failure to take a futile action can never be deficient performance.").

Petitioner claims counsel failed to impeach Detective Burow on the basis that his testimony was based on case notes left by deceased Detective Williams.  (ECF No. 19 at 16.)  He appears to allege defense counsel did not object when Detective Burow interposed his own opinions based on Detective Williams' case notes (*id.*) but does not identify those opinions.  This claim fails as conclusory.  *James*, 24 F.3d at 26.

Petitioner claims his counsel should have impeached victim 2 by introducing evidence she had read a pornographic book with content identical to her allegations against him.  (ECF No. 19 at 15.)  He also claims counsel "failed to question the victim's mother as to how much access to pornographic information, movies, magazines the victim had in

17-CV-1898-MMA(WVG)

the near past." (*Id.*) Petitioner states that defense counsel explained to him that he did not introduce that evidence because "he did not want the jury to think that he was accusing the victim of doing something wrong." (*Id.*)

Defense counsel filed a pre-trial motion to introduce evidence that victim 2 possessed sexual knowledge. (CT 127-35.) As discussed in claim two, defense counsel called several witnesses who testified that victim 2 was exposed to pornography in her home by her mother and once brought one of her mother's pornographic books to the daycare center. The decision by defense counsel regarding whether and to what extent to attempt to impeach the victim or her mother with evidence the victim was exposed to sexually explicit material, particularly when defense counsel called several independent witnesses regarding the victim's exposure to such material after filing a pre-trial motion to introduce that evidence, clearly falls within the "wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. 689 ("There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way."); *Harrington v. Richter*, 562 U.S. 86, 110 (2011) ("Representation is constitutionally ineffective only if it 'so undermined the proper functioning of the adversarial process' that the defendant was denied a fair trial.") (quoting *Strickland*, 466 U.S. at 686).

Next, Petitioner claims his counsel failed to call the expert witness retained by the defense prior to trial to testify at trial, which deprived him of a defense because "her information would have created doubts in the jury's mind as to petitioner's capacity to commit such crimes." (ECF No. 19 at 16-17.) Defense counsel filed a motion for continuance of the trial date in order to accommodate his expert witness. The motion stated (1) counsel received missing and necessary reports only after a discovery motion on April 28, 2013, (2) he was informed on May 21, 2013 that the petitioner's family could not afford to hire an expert, (3) he filed a motion for funding on May 24, 2013, which was approved on June 7, 2013, and (4) he sent all of the discovery in the case to Dr. Erin Ferma on June 21, 2013, but Dr. Ferma informed counsel she could not have a report ready by the July 24,

2013 trial date. (RT 92.) The motion for a continuance was granted on July 3, 2013, and trial began seven months later, on February 10, 2014. (CT 348, 352.)

Petitioner has not identified the substance of Dr. Ferma's testimony but presents a conclusory allegation that it "would have created doubts in the jury's mind as to petitioner's capacity to commit such crimes." (ECF No. 19 at 16-17.) He has not overcome the presumption that defense counsel was in a position to know the content of Dr. Ferma's testimony and whether it would have assisted the defense, and that counsel made an informed, tactical decision not to call her to testify at trial. *See Strickland*, 466 U.S. at 687 (holding that the burden to "show that counsel's performance was deficient" rests squarely on the defendant); *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (recognizing a strong presumption that counsel took actions "for tactical reasons rather than through sheer neglect") (citing *Strickland*, 466 U.S. at 690 (holding that counsel is "strongly presumed" to make decisions in the exercise of professional judgment); *Burt v. Titlow*, 571 U.S. 12, 23 (2013) ("It should go without saying that the absence of evidence cannot overcome 'the strong presumption that counsel's conduct (fell) within the wide range of reasonable professional assistance.'") (quoting *Strickland*, 466 U.S. at 68)).

Finally, Petitioner states that "counsel was told that the accusations came three days after a fight between petitioner and." [sic] (ECF No. 19 at 18-19.) In his state habeas petition he referred to the fight as an "altercation" between himself "and the alleged victim's family." (ECF No. 26-19 at 10.) This unsupported conclusory allegation is insufficient to show ineffective assistance of counsel. *James*, 24 F.3d at 26; *see also Hendricks v. Calderon*, 70 F.3d 1032, 1040 (9th Cir. 1995) ("While the Sixth Amendment requires an attorney to look for evidence that corroborates the defense he pursues, the Sixth Amendment has not been expanded to require an attorney to hunt down such marginally relevant and indirectly beneficial evidence.").

The Court recommends habeas relief be denied as to claim three because it is untimely, and alternately because it clearly fails under de novo review.

# V.   CONCLUSION

For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue an Order (1) adopting this Report and Recommendation and (2) directing that Judgment be entered denying the Second Amended Petition.

**IT IS ORDERED** that no later than **April 5, 2019**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **April 26, 2019.**  The parties are advised that failure to file objections with the specified time may waive the right to raise those objections on appeal of the Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

DATED:  February 25, 2019

Hon. William V. Gallo
United States Magistrate Judge

17-CV-1898-MMA(WVG)